## The Stollberg Hardware Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 100791.   Promulgated March 31, 1942.

*F. A. Harrington, Esq.*, and *Henry W. Seney, Esq.*, for the petitioner.

*W. W. Kerr, Esq.*, for the respondent.

OPINION.

HARRON: In making its income and excess profits tax return for the fiscal year ended September 30, 1936, the taxable year, petitioner computed gain or loss on the disposition of the inventories and on the realization of the accounts and notes receivable, and depreciation on the depreciable assets, all of which it had acquired from the old company, by using the basis of those assets in the hands of that company. In the hands of the old company the basis of the inventories was $112,966.27 and of the accounts and notes receivable was $65,588.76; and the basis of the depreciable assets after adjustment for depreciation was $11,481.14.

Respondent determined that petitioner was not entitled to use the basis of the assets in question in the hands of the old company and that the correct basis of the assets in question was the cost thereof to petitioner. He determined that all of the assets acquired by peti-

tioner had a total cost to it of $129,965.91[1] and that the cost to it of the assets in question was as follows: inventories, $74,006.36; accounts and notes receivable, $42,968.45; and depreciable assets, $7,521.53.

Petitioner bases its claim that the correct basis of the assets in question was the same as in the hands of the old company on section 113 (a) (7) of the Revenue Act of 1934, the pertinent provisions of which are set forth in the margin.[2] The first requisite for the application of section 113 (a) (7) is that the assets in question be acquired by petitioner "in connection with a reorganization." The definition of the term "reorganization" as used in section 113 (a) (7) is provided by section 112 (g) (1), the provisions of which are set forth in the margin.[3] Petitioner argues that the transaction in which it acquired the assets of the old company was a reorganization within the meaning of both subdivisions (C) and (E), but especially within the meaning of subdivision (C), of section 112 (g) (1).

The transaction in which petitioner acquired the assets of the old company was not a reorganization within the meaning of subdivision (C) of section 112 (g) (1). Subdivision (C) requires that "immediately after the transfer the transferor or its stockholders or both" be in "control" of the transferee. "Control" is defined in section 112 (h)[4] as "the ownership of at least 80 per centum of the voting

[1] The amount of $129,965.91 appears to be the total of the following amounts: $61,700, the total par value of the 617 shares of preferred stock issued by petitioner to the assenting creditors of the old company; $443.17, the net amount paid by petitioner to assenting creditors of the old company for fractional shares; $23,278.63, the total amount paid by petitioner to nonassenting creditors of the old company; and $44,544.11, the total amount of the liabilities of the old company or of the trustee assumed by petitioner.

[2] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.
(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—
    *        *        *        *        *        *        *
(7) TRANSFERS TO CORPORATION WHERE CONTROL OF PROPERTY REMAINS IN SAME PERSONS.—If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 50 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. * * *

[3] SEC. 112. RECOGNITION OF GAIN OR LOSS.
    *        *        *        *        *        *        *
(g) DEFINITION OF REORGANIZATION.—As used in this section and section 113.
(1) The term "reorganization" means (A) a statutory merger or consolidation, or (B) the acquisition by one corporation in exchange solely for all or a part of its voting stock; of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation, or of substantially all the properties of another corporation, or (C) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (D) a recapitalization, or (E) a mere change in identity, form, or place of organization, however effected.

[4] SEC. 112. RECOGNITION OF GAIN OR LOSS.
    *        *        *        *        *        *        *

stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation." In this case it is clear that immediately after the transfer "control" of petitioner was neither in the old company nor in its "stockholders." *Helvering* v. *Southwest Consolidated Corporation*, 315 U. S. 194. Contrary to petitioner's contention, the creditors of the old company could not be regarded as its "stockholders" within the meaning of subdivision (C). *Helvering* v. *Southwest Consolidated Corporation, supra;* cf. *Commissioner* v. *Cement Investors, Inc.*, 122 Fed. (2d) 380. The stockholders of the old, transferor corporation did not own 80 percent of the voting stock or 80 percent of the shares of all other classes of stock of the new corporation, petitioner.

Nor was the transaction a reorganization within the meaning of subdivision (E) of section 112 (g) (1). In *Helvering* v. *Southwest Consolidated Corporation, supra,* the Supreme Court made the very pertinent observation that "a transaction which shifts the ownership of the proprietary interest in a corporation is hardly 'a mere change in identity, form, or place of organization' within the meaning of clause E."

It follows that section 113 (a) (7) is not applicable.

The correct basis of the assets in question was thus the cost of such assets to petitioner. Sec. 113 (a).[5] Petitioner acquired the assets of the old company by paying cash in the amount of $23,721.80, by assuming liabilities in the amount of $44,544.11, and by issuing 617 shares of preferred stock and 1,617 shares of common stock. Part of the cost was represented by a total of $68,265.91 in cash paid and in liabilities assumed. The balance of the cost was represented by the 617 shares of preferred stock and 1,617 shares of common stock issued. The measure of the part of the cost represented by the shares of stock was the fair market value thereof at the time of issue. *Amerex Holding Corporation*, 37 B. T. A. 1169; affd., 117 Fed. (2d) 1009; certiorari denied, 314 U. S. 620. Petitioner contends that the fair market value of the shares of stock at the time of issue should be measured in turn by the fair market value of the assets of the old company at that time less the total of $68,265.91 in cash paid and in liabilities assumed. See *Amerex Holding Corporation, supra.*

In our opinion the fair market value of the shares of stock at the time of issue should be measured by the fair market value of the assets of the old company less $68,265.91. In this case the fair market value

---

(h) DEFINITION OF CONTROL.—As used in this section the term "control" means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.

[5] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; * * *

of the assets (less $68,265.91) is the best evidence of the fair market value of the shares of stock issued therefor. See *Amerex Holding Corporation, supra.* The use of the 617 shares of preferred stock and 1,617 shares of common stock, issued for the assets of the old company, was fixed and determined by the amended plan of reorganization prior to their authorization, and was limited and restricted by that plan to the very use to which they were put. See *Amerex Holding Corporation, supra.* It is true that 185 units consisting of one share of preferred stock and one share of common stock were sold for $100 per unit in connection with the organization of petitioner. However, the number of shares of stock so sold was relatively small in comparison with the number of shares of stock issued for the assets of the old company; and about two-thirds of the number of shares so sold were sold to parties who already had an interest in the old company either as creditors or as stockholders. Under the circumstances the sale of the 185 units of stock at $100 per unit does not provide the best evidence of the fair market value of the shares of stock issued for the assets of the old company. *Amerex Holding Corporation, supra;* cf. *West Point Investment Co.,* 1 B. T. A. 436, with *Young & Vann Supply Corporation* v. *United States,* 10 Fed. Supp. 697, and *John J. Flynn,* 35 B. T. A. 1064. In view of the limitations and restrictions on the use of the shares of stock issued for the assets of the old company, the best evidence of the fair market value of such shares is provided by the fair market value of the assets (less $68,265.91). *Amerex Holding Corporation, supra.*

The record satisfies us that the assets acquired by petitioner from the old company had a total fair market value at the time of acquisition of $195,910.63; and that the fair market value of the inventories was $112,966.27; of the accounts and notes receivable, $65,588.76; and of the depreciable assets, $11,481.14. Thus the fair market value of the shares of stock issued for the assets was $195,910.63 less $68,265.91, or $127,644.72; and the total cost of the assets to petitioner was $195,910.63. The total cost of $195,910.63 was allocable in part as follows: $112,966.27 to inventories, $65,588.76 to accounts and notes receivable, and $11,481.14 to depreciable assets.[6] See *Hazeltine Corporation,* 32 B. T. A. 4; Regulations 94, art. 23 (1)–4.

Petitioner concedes that respondent correctly disallowed two deductions totaling $271.10. Respondent allowed three deductions totaling $16,733.20 which were not taken on petitioner's original return. Therefore, there is no deficiency and there is an overpayment in income tax for the taxable year. The amount of the overpayment

---

[6] It so happens that the basis of the assets in question to petitioner is approximately the same as the basis thereof to the old company at the time of the transfer of assets.

will be determined on computation under Rule 50. It has been found as a fact that petitioner paid $2,708.10 in income tax for the taxable year within three years before filing a claim for the refund of $2,129.93 in income tax for such year.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

Murdock concurs only in the result.